**NATIONAL IRANIAN OIL, Plaintiff,**

v.

**MAPCO INTERNATIONAL INC.
and Mapco, Inc., Defendants.**

Civ. A. No. 91–269–RRM.

United States District Court,
D. Delaware.

June 16, 1993.

Alfred J. D'Angelo, Jr., Pepper, Hamilton & Scheetz, Wilmington, DE, Stephen M. Truitt, and Susan L. Launer, Pepper, Hamilton & Scheetz, Washington, DC, for plaintiff.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Louis C. Lustenberger, Jr., and George R. Hinckley, Jr., Donovan, Leisure, Newton & Irvine, New York City, for defendants.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a contracts case. The plaintiff, National Iranian Oil Company ("NIOC"), produces and sells petroleum and related products. The defendants, Mapco International and its parent, Mapco Inc. (collectively "Mapco"), refine and sell crude oil. Mapco refused to pay for crude oil it received from NIOC delivered pursuant to an April, 1979, agreement between the parties. Following unsuccessful attempts by the parties to settle the ensuing dispute, NIOC filed this action for goods sold and delivered, breach of contract, and unjust enrichment. The defendants have moved for summary judgment on the ground that this action is barred by the statute of limitations. For the reasons set out below, the Court will grant the defendants' motion for summary judgment.

## FACTS

On April 23, 1979, Mapco and NIOC entered into a "Crude Oil Sale/Purchase Contract," pursuant to which NIOC agreed to deliver to Mapco at Kharg Island, Iran, quantities of light and heavy crude oil. Delivery was to be accomplished in shipments made between May 1, 1979, and December 31, 1979. The agreement further specified that NIOC would receive payment for the deliveries by drawing from letters of credit opened by Mapco at an American bank. NIOC would have sixty days from the date of the Bill of Lading of a particular shipment to draw upon a letter of credit. Additionally, in order to draw upon a letter, NIOC was required to present: (1) a seller's invoice; (2) an original and original duplicate and triplicate Bills of Lading made out to the order of the seller, blank endorsed and signed by the Master of the vessel; and, (3) a certificate of Quantity/Quality.

On October 13, 1979, NIOC made the first of two deliveries of crude oil. Prior to delivery, on September 26, 1979, Mapco ordered a bank to open a letter of credit in favor of NIOC to cover Mapco's purchase of approximately 183,000 barrels of crude oil. The

second delivery, accomplished November 6, 1979, followed Mapco's October 22, 1979, order of a second letter of credit to cover a shipment of 186,000 barrels of crude oil. NIOC sent invoices with each shipment: the first for $4,258,092; the second for $5,875,443.18 (including interest through November 10, 1981).

On November 4, 1979, just prior to the second delivery of crude oil, Iranian students seized the United States Embassy in Tehran, Iran, in the process taking as hostages approximately sixty Americans.

On November 5, 1979, NIOC attempted to collect payment for the first shipment of oil by drawing upon the first letter of credit opened by Mapco. As NIOC failed to produce proper documentation to draw upon the letter as specified in the April, 1979, contract, the bank refused payment to NIOC. The discrepancies ostensibly included: 1) the Bill of Lading was not issued to the Order of the seller and blank endorsed; 2) unexplained differences in the unit prices of the oil; and, 3) sample receipts had not been provided. NIOC did not present any documents, sufficient or otherwise, to collect payment for the second shipment.

On November 14, 1979, in response to the hostage crisis and pursuant to the International Emergency Economic Powers Act, President Jimmy Carter issued an Executive Order freezing all Iranian assets subject to the control of the United States. NIOC claims that its invoices remained unpaid as result of President Carter's actions; however, NIOC does not appear to contest that it failed to provide proper documentation during its attempt to collect payment on November 5, 1979.

On January 19, 1981, the United States and Iran came to an agreement, embodied in the Algiers Declarations, which provided for the release of all hostages. The parties subsequently engaged in settlement negotiations regarding payment for the shipments but failed to reach any agreement.

In late June, 1984, NIOC notified Mapco of its intention to submit the matter to arbitration in Iran. On October 4, 1984, Mapco cabled to NIOC its refusal to arbitrate in Iran.

On May 7, 1986, counsel for NIOC wrote to Mapco's General Counsel, Randolph Jones, Jr., Esq., to inform Mapco that NIOC considered Mapco liable for interest on the amount owed under the contract at the rate charged by the Federal Reserve Board for extended credit to depository institutions. On May 27, 1986, Jones responded on behalf of Mapco by letter ("Jones letter") indicating that Mapco would not pay the interest claimed by NIOC. The letter also stated the following:

There is an underlying intent and obligation that the notification necessary to start the process has to be made timely. This is not the case in the instant matter as NIOC has waited almost six years to send any notification. The reason for the delay is obvious. NIOC recognizes that the only reason payment was not effected within 60 days was due to NIOC's failure to comply with Contract No. 129 and the letters of credit opened pursuant thereto.

More importantly, the whole subject of interest is moot. MAPCO International does not owe any interest. As NIOC has been advised on numerous occasions, MAPCO International remains prepared to pay the principal amount for each cargo upon NIOC's submitting all conforming documents, without exceptions, errors or omissions, required under Contract No. 129. . . . To this date NIOC has failed to do so. Since timely payment has always been dependent solely on the actions of NIOC, no interest is due when the reason for nonpayment rests with the actions and subsequent inaction of NIOC. Interest would only be due if NIOC has fully complied without exception to all the document and other contractual requirements and MAPCO International failed to pay thereafter (assuming, of course, that MAPCO International did not have any contractual claims of its own against NIOC). Such an event has not yet occurred.

Docket Item ("D.I.") 23, Exhibit K. Settlement discussions subsequently continued, but the parties were unable to reach an agreement.

On November 20, 1990, NIOC filed in this Court a petition to compel arbitration. On May 7, 1991, NIOC filed the instant suit.

On June 28, 1991, the Court ordered a stay in the proceedings, pending resolution of the petition to compel arbitration. On November 12, 1991, the Court dismissed NIOC's petition to compel arbitration; on December 28, 1992, the United States Court of Appeals for the Third Circuit affirmed the decision. *National Iranian Oil Company v. Mapco International, Inc.*, 983 F.2d 485 (3d Cir. 1992).

In the interim, on March 9, 1992, Mapco International filed for bankruptcy under Chapter 11 of the United States Bankruptcy Court in the Northern District of Oklahoma. The Oklahoma Bankruptcy Court subsequently granted Mapco International's motion to lift the automatic stay of § 362 of the Bankruptcy Code in order to proceed to bring the instant case to a speedy resolution. *In re Mapco International Inc.*, No. 92–00766–C (Bankr.N.D. Okla. June 4, 1992).

The Court ultimately lifted the stay on January 5, 1993, and shortly thereafter the defendants moved for summary judgment asserting that the plaintiff's claims are barred by the applicable statute of limitations.

**DISCUSSION**

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the evidence offered demonstrates that there is no genuine issue of material fact and no jury could reasonably find by a preponderance of the evidence that the nonmoving party is entitled to a judgment in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating a lack of genuine issue of material fact; accordingly, courts must read the record in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The sole issue arising from the defendants' motion for summary judgment is whether the plaintiff's claims for goods sold and delivered, breach of contract, and unjust enrichment are barred by limitations. The parties agree that this action initially accrued in January, 1980 (sixty days from the second Bill of Lading), and is therefore time-barred under the four-year Delaware statute of limitations for a breach of contract for the sale of goods, 6 Del.C. § 2–725. The plaintiff contends, however, that § 2–725 does not apply in this case; rather, 10 Del.C. § 8109, which has a six-year limitations period and specifies a different time from which the limitations period would commence, governs on the facts of this case. Section 8109 provides, in pertinent part:

> When a cause of action arises from a promissory note, bill of exchange, or an acknowledgment under the hand of the party of a subsisting demand, the action may be commenced at any time within six years from the accruing of such cause of action.

In brief, the plaintiff argues that the May 27, 1986, Jones letter constitutes an "acknowledgment under the hand of the party of a subsisting demand." By its reckoning, the plaintiff had six years from the date of the Jones letter—until May 27, 1992—to file this suit. As the plaintiff filed suit in 1991, its claim would not be time barred under § 8109.

■ Defendants argue that for the purposes of § 8109 the Jones letter is not an "acknowledgment" for the following reasons: 1) it does not recognize the existence of a debt and contain a promise to pay the debt; 2) it is not an "instrument"; and, 3) NIOC's claims do not arise from the letter. The Court refuses to consider the latter two arguments, however, as they should have been presented in Mapco's Opening rather than Reply Brief. *See* United States District Court for the District of Delaware Local Rule 7.1.2.(c)(2).

Defendants also argue that the Jones letter is not admissible under Federal Rule of Evidence 408. Because the Court concludes that the Jones letter is not in fact an acknowledgment for the purposes of § 8109 as the letter does not recognize a prior obligation, it need not address this argument.

An "acknowledgment" which commences the six-year limitations period of § 8109 is defined as "an instrument which by its terms clearly recognizes or admits the existence of a prior claim or debt...." *Mykulak v. Collins*, 301 A.2d 313, 316 (Del.Super.Ct.1973) (interpreting § 8109's precursor statute, 10 Del.C. § 8108). NIOC contends that the Jones letter manifests Mapco's clear recognition of its debt to pay the *principal* amounts due and owing for the two 1979 crude oil shipments, even if the letter fails to acknowledge Mapco's liability for *interest* on the principal. In support of this contention, NIOC points to the following language in the Jones letter:

> As NIOC has been advised on numerous occasions, Mapco International remains prepared to pay the principal amount for each cargo upon NIOC's submitting all conforming documents, required under Contract 129.

Patterson Affidavit Exh. K. NIOC also argues that § 8109 does not require a promise to pay the acknowledged debt.

The Court cannot find that the Jones letter is an acknowledgement under § 8109, as the Jones letter fails the simple test articulated in *Mykulak* requiring the clear recognition of a preexisting debt. In reaching this conclusion, the Court need not determine whether a writing must contain a promise to pay a recognized debt in order to be an acknowledgement.

The Jones letter cannot be taken out of context; it is one element of extensive correspondence relating to the settlement of the dispute between NIOC and Mapco regarding payments for the two 1979 shipments of oil. Viewed in its entirety and in light of the settlement negotiations then taking place, the Jones letter—and in particular the language relied upon by the plaintiff—appears to express a willingness to pay NIOC the principal amounts merely for the purposes of settling the dispute and not in recognition of any legal responsibility for those amounts.

In other words, there appears to be a distinction between the acknowledgment of a debt and the more general acknowledgment of a willingness to pay another a certain sum.

In *Mykulak*, in contrast to this case, the defendant Collins indisputably recognized, in writing, his status as a debtor:

> On this fifteenth day of February, 1967, I William Collins, do hereby promise, with witness, to pay the sume [sic] of $\_\_ to Mr. Peter Mykulak, for the loan extended to me by Mr. Peter Mykulak. Upon payment, all debts and transactions will be paid in full and final.

*Mykulak*, 301 A.2d at 314 n. 1. In finding that Collins had acknowledged a debt, the Delaware Superior Court focused in particular on the words "for the loan extended to me." The Jones letter lacks any language of similar effect; nowhere does it even impliedly suggest Mapco's status as a debtor. *Contrast also Wilmington Plumbing Supply Co. v. A & H Plumbing and Heating, Inc.*, No. 81C–SE–37, slip op. (Del.Super.Ct. Jan. 27, 1983) (acknowledgement in instrument stating, "WHEREAS, A & H presently is indebted to Supply in the Approximate amount of 120,000 said indebtedness representing purchases of various plumbing, heating and other building supplies by A & H from Supply....").

The Court will issue an Order in accordance with this Opinion.